Case 19-3089, Johns Manville v. Intl Brhd of Tmstrs Local 20, Oral Argument, 15 minutes per side. Ms. Spagna for the appellant. Good morning. Good morning, Your Honors. My name is Stephanie Spagna. I'm here on behalf of the defendant appellant, Tmstrs Local 20. We are here regarding the district court's vacator of an arbitration award that was rendered in favor of Tmstrs 20 pertaining to the company's discharge of the grievance. And the case turns upon the fact that the arbitrator, in this case, Thomas Knoll, did not include the word, did not issue a separate finding that the discharge was arbitrary, as well as having been without just cause. He found that it was without just cause. He did not issue an express finding that it was arbitrary. And our contention is that the district court erred in vacating this award, and in doing so, it misapplied this court's long precedent, stretching back to Michigan Family Resources in 2008, and even up through Economy Linen in 2018. And did not afford this decision the deference that this court requires. As you're well aware, there are three prongs to the Michigan Family Resources test. The first is whether the arbitrator acted within his authority to decide the dispute that was properly committed to him in the arbitration. The second is whether it was fraud or misconduct or dishonesty. And both parties have just stipulated that that is not an issue in this case. And the third is whether... Can I ask you a question about, I mean, I'm curious about arbitration and maybe the way issues are framed in arbitration that perhaps is different from the way I think of them as being framed in district court or trial court. So I'm reading from page ID 153, and I guess neither of you participated, it looks like, by your names in this, in the arbitration? In the arbitration itself, no. Yeah. So there's this framing where the arbitrator comes in, have the parties talked about a stipulated issue? No, we haven't. And then they get agreement, and they basically seem to agree that the question is whether the agreement was discharged for just cause, that it turns in Article 27. And so if this were a typical trial court thing, I'd say, okay, you're allowed to frame the issue how you want. That's the way it was framed. And so in our review, we ask ourselves whether this fails Michigan Family Services on that framed question. Is there something about arbitration that's different from that understanding? Because I take it there's nothing later in the arbitration where people change their minds about what's being framed. No, there is nothing later in the arbitration that alters that framing of that question. Okay. So the arbitrator says, was there just cause, and then is asked about the remedy, right? I mean, isn't that all there is? Well, I mean, theoretically, one could argue that the company waived any sort of claim to argue otherwise, that he was also required to – Or you two. Pardon me? You two. Everybody waived it. Yes, exactly. Exactly. So, although, ironically, in an earlier decision, also pertaining to the same language, back in 2014, the northern district also had considered that question and disregarded it and said that was not material. I think the issue here with Michigan Family Resources, though, is that district court misconstrued that first prong of the test, which has to do with whether or not the dispute is properly before the court. And I think we need to draw a distinction between dispute and the framing of the issue. The number of the dispute here is the termination, the discharge of this grievance. And that is an appropriate subject for an arbitrator to consider under this contract. The contract specifically excludes some other matters, job evaluations, wages, from the purview of an arbitrator. But the fact of the discharge itself, the essence of the grievance itself, was properly before this arbitrator. And so our first contention is that the district court misconstrued Michigan Family Resources by conflating the issue of dispute versus the issue as it's framed. So once we move past that question, then you move on to the prong, the next prong that we believe that the district court misconstrued, which is whether or not the arbitrator exceeded, or pardon me, arguably construed the contract in rendering his award. And we believe that there... I mean, the reason the framing issue is important to me is I'm having a hard time understanding how the arbitrator arguably construed Article 15. Because he didn't construe, or he or she, I don't know the gender, but so there was no construction of Article 15. So how is that... Does Michigan Family Services require you to point to the sections that people are debating? And that's why I think the framing is so important. Everybody said, look at Article 27, look at Just Cause. He chose to do what they asked. And then we look at the Michigan Family Services deferential review as to what he was asked to arbitrate. I would have thought the only argument here is I don't understand how he's construing 15. I don't see anything in the opinion construing 15. Well, there are other sections at issue here as well, not just 15. Article 27 allows the, pardon me, my reading glasses, the rights of management, permits management to discharge for just cause. There's no actual right under the management rights section of the contract to discharge arbitrarily. So one can argue that there's a disconjunction, I'm not sure if I'm making up a word there, between those two sections. There's also another section of the contract, Article 5, Rules of Conduct, which says that if it has been found, this is under Paragraph 22, if it has been found that an employee has been, quote, unjustly discharged, such employee shall be reinstated, et cetera and so forth. Let me ask the question this way. Let's say this whole thing began a little differently. Arbitrator walks in and says, what do you want me to do? And they say, you know, we're having trouble figuring out how Article 15 and Article 27 interrelate and whether arbitrariness is part of it. So that's the way they present it. And the arbitrator proceeds to issue a ruling that relies only on Article 27. Now my take on that one is as soft as the review is under Michigan Family Services, if the arbitrator didn't even bother to look at how Article 15 had bearing on the dispute, I would have to say we can't allow that. He was asked to look at two things. He looked at one. That's not right. That's not trying. That's not even trying. You have to try. When you try, you cite the right things, it gets very deferential. But if you don't even look at them, as shown by the long opinion, that seems problematic to me. So from the company's perspective, that's what happened. But the problem is the company didn't ask the arbitrator to do that. The company said look at Article 27. That's what he did. And now we apply Michigan Family Services to that question. I don't know. Tell me what I'm missing. But that's how I see the case. Well, I think if I'm understanding your question. I know you're trying to figure out is this good or bad for me. That's always a good question. I can tell you're unsure. And I'm not going to tell you the answer. If I'm understanding your question correctly, it's premised on the idea that the parties would have expressly asked the arbitrator to weigh all these three sections together. The two which called. Simplifying it. I'm saying just two. 15 and 27. Gotcha. You say to the arbitrator it's two and he only looks at one. That's problematic. It doesn't matter who wins. That seems problematic to me. Maybe I'm wrong. I think the fact that the issue didn't rear its head at the arbitration sort of indicates a point that we've raised in our brief, which is that the concept of arbitrariness is inherent in just cause. It's inherent. I also do want to turn to another point, which is that while Arbitrator Noel did not make an express finding in the opinion section of his award that the company acted arbitrarily, he does in other sections of his opinion, specifically when he describes the position of the union, reiterate the union's position that the discharge was arbitrary. That actually appears in his opinion. And he also notes with respect to the company's position that the company had maintained that it had treated all the employees similarly. Your argument is that he may not have cited Article 15, but he was referring to the concept in Article 15? Yes, exactly. And I also think that the fact that the district court, in weighing our arguments, had found some possible merits to the union's position that the arbitrariness concept was embedded in the decision, while he found other factors mitigating against that. That goes to the nature of arguably construed. The standard is not unequivocally construed. And I think that's the kind of standard that the district court actually applied here. They applied an unequivocal construction standard. They simply had to be arguable. And the very fact that we can stand here and point to sections which may go back and forth on this question, in our view, renders this an arguable construction case. And I do also believe that I wanted to emphasize the point that we had raised in our brief, which is that while it's not controlling law in this district, the Eastern District Court for the District of Louisiana in New Orleans Cold Storage, considering very similar language in a separate contract, had found that although the arbitrator in that case likewise had not made an express finding as to arbitrariness, that nonetheless it was rationally inferable from the decision itself. And while the Fifth Circuit does not apply the same exact standard that the Sixth Circuit does, in our view, we respectfully submit that rationally inferable is roughly synonymous with arguably construed. Thank you. Thank you.  Good morning. Good morning. Could you put your voice up, please? Margaret Lockhart on behalf of Appley Johns Manville. And I will address Judge Sutton's question first. If you referred to part of that arbitration transcript, and that was actually the first things that were on the record, but before the parties got to that issue, the very first thing that the Johns Manville representative said. Is this in the record, what you're about to say? It's in the record, yes. It's in page 7 of the transcript, document 9-1, page 153. Okay. Johns Manville's representative said, the arbitrator asked about the issue. Johns Manville's representative said just cause and whether the company acted arbitrarily. The union's representative then said, well, that's really a restriction on the arbitrator's authority, so the issue, let's talk about just cause and what should be the remedy. And it's our position that we didn't waive anything, we didn't take Article 15 out of the analysis. Let's grant that that conversation was had, but as you pointed out, it was before this, right? Correct. And then at this, I just don't understand how it's not framed, whether the grievance was discharged for just cause. Well, there's a second part to that framing, Your Honor. And if so, what shall be the remedy? And when you get to the remedy, you have to look at Article 15. And Johns Manville, in its post-hearing brief, so excited to Article 15, quoted Article 15. No, the remedy relates to should it be suspension or something else other than outright discharge. That doesn't relate to whether, in fact, the arbitrator had the authority to set aside the company's decision. Well, in this case, it does, because in Article 15, which limits the arbitrator's authority, the parties agreed to expressly limit the arbitrator's authority to modify the discipline that Johns Manville imposed. Article 15 says that the parties is authorized to reverse Johns Manville's decision regarding discipline or discharge only if the arbitrator finds that Johns Manville acted arbitrarily and without just cause. I understand what Article 15 says. But I gather the record says that counsel for the company originally told the arbitrator that they wanted the issue to be according to the contract in terminating Mr. Hudson, did the company act arbitrarily and without just cause or in violation of the collective bargaining agreement. But then the union counsel objected to that and said we should use Article 27 language instead. And the stipulated issue was, was the discharge of Hudson for just cause? If not, what should the remedy be? That's what was submitted to the arbitrator. I don't think that the union counsel objected to the issue of arbitrariness, but what he said was that goes to the arbitrator's jurisdiction over the remedy. That's just not what's in this sequence. The sequence is very clear. You've read it, right? I have read it. And I believe that Article 15 comes in when you're talking about the arbitrator had to make two separate determinations. Was there just cause for the discharge? If not, what's the remedy? And in formulating a remedy, he is bound by Article 15. So he says is the matter properly before the arbitrator? Yes and yes. And that's right after the statement about what should the remedy be. Because you're now constraining 15 as limiting what power he had. Well, Article 15 does limit his power on the remedy. Maybe, but not according to the way this was framed for him. Well, I don't think that the parties had to. When you ask yourself what was the arbitrator thinking with the written decision and not mentioning Article 15, do you really think it was just flat out forgot and he'd been told look at Article 15 and Article 27? Well, he would. And the parties' post-hearing briefs are also in the record. And the arbitrator was told to look at Article 15. Yeah, but I'm trying to say the what happened here seems to me to be described by what happened before. And the what happened before has look at Article 27 and just cause. And then what's the remedy for that? There's no qualification at that point. By the way, when we get to remedy, remember, all bets are off when it comes to the limits in Article 15. Well, I believe that that's why John's Manville representative raised that issue at the outset. So the arbitrator was aware of it. And, again, the arbitrator at once the transcript is produced, the arbitrator then gets briefs from the parties. And John's Manville specifically quoted Article 15 in its post-hearing brief. And the union argued the unfairness or arbitrary issue. So I think that it was certainly before him. And he had the language. He had the contract. John's Manville pointed out Article 15. John's Manville indicated that he did have to find that the riot. But Mansville didn't insist on that arbitrariness standard being part of what the issue, stipulated issue, to the arbitrator was. It did not because that is subsumed in what is the remedy. You're saying it's subsumed. But, I mean, where in the record? That's just your argument. Well, I believe because if the arbitrator has to determine a remedy, then we have to look at how does the contract limit the arbitrator's ability to determine a remedy. And there's an express limitation.  Well, but it wouldn't be bad to research the issue of a remedy if, I mean, under the language of the collective bargaining agreement, supposedly the arbitrator didn't have jurisdiction to change the company's discharge of an employee unless it was both arbitrary and without just cause. Isn't that what Article 15 says? Yes. So in order to alter, even having found just cause, in order to alter the remedy or the discipline that the company imposed, the arbitrator had to make a separate finding that the company acted arbitrarily. And only under those circumstances, without just cause and arbitrary, was the arbitrator authorized to adjust the remedy that John's Manville imposed. That's what the parties agreed to. It's different from the typical just cause standard. Tell me how you react to this way of thinking. In one sense, I agree with part of your argument. In a hypothetical case where there are two provisions at issue, the parties say you have to construe these two provisions to figure out the right answer, and the arbitrator just never mentions one of them. Just doesn't mention it, doesn't even seem to be implied. He just seems not to be aware of it. I think that would fail even the light review of Michigan Family Services. So I think that's kind of the essence of your claim. Am I allowed to, however, now here's the harder question, in figuring out exactly what I'm measuring Michigan Family Services' test against, why aren't I allowed to account for what the arbitrator thought he was being asked to do? Because the case looks a lot less like the hypothetical I just gave you, where he's very clearly told, look at these two provisions, there seems to be tension between them, as the parties think, and you've got to figure out what the meaning is of both together. That's one case, but this is one where there's no way you can say it was presented to him that clearly. There's just no way given this, because if anything, I would say he was told the opposite. But even if I grant you that there's some other language where he might have been confusing what was in play, shouldn't I account for that when I'm applying the standard of review? I would first, to address your argument that that's not what happened, and the way these arbitrations work is the arbitration hearing is where you get the facts in, and you do your analysis and your argument in the post-hearing brief. And the post-hearing brief, again, is in the record, I believe it's document 9-3, and page 439, 9-3 and 9-4 are the two post-hearing briefs. And Johns Manville did, in fact, direct the arbitrator to that language and did argue that there was no basis for finding, we argued there was no just cause, he disagreed with that, but also argued that there was no basis for finding that the termination was arbitrary based upon the facts of the case. And we submit that based upon his findings of fact, you cannot infer a finding of arbitrariness. He did find a serious violation of a critical plant rule. He found that the grievance endangered his own health and the health and safety of his coworkers by coming to work drunk, and that he endangered his own health when he left work and drove himself home while well above the legal limit. So what happens if you're right, it goes back to the arbitrator to give us an assessment on arbitrariness? I don't think that there is a basis. I think, again, the arbitrator didn't make this finding. It was critical to adjust the remedy. You would say it wouldn't even go back to look at Article 15? I would say it does not. I think that he didn't make the finding. He didn't find that the company acted arbitrarily, so therefore he was without authority to adjust the remedy. And so we believe that the award was properly vacated. And as counsel noted, this is the second case of this nature that both decided by Judge Carr, and in the first case there was an issue about how the issue was framed, and I believe in the first case this is not in the record. The union asked that it be remanded, and the judge said no. He had his opportunity to make a finding. He didn't make the finding, and therefore he didn't have the authority to adjust the remedy. Yeah, so you're going to do the ones raising a kind of waiver point. Everybody's using waiver one way or another. Well, I don't know that it's waiver. In other words, the chance was presented. It didn't happen. You can't go back and do it. Well, it really would be a second bite at the apple because the arbitrator, we had the full hearing. Again, the arguments were made, and Johns Manville did bring to the court. Is there a case that bolsters your point that it doesn't so much matter how the questions presented to the arbitrator at the beginning in terms of this kind of colloquy? What really matters in terms of defining what's in front of the arbitrators, the post-hearing briefs? That issue, I am not aware of a case off the top of my head that addresses that issue. But, again, I would point out that this issue was raised with the arbitrator. Did it what? Pardon? I didn't hear you. The issue, the Article 15 was raised with the arbitrator. Only when the post-hearing briefs, after the arbitrator had heard all the proof. It was in the post-hearing briefs and also at the outset of the hearing. At the very beginning. At the very beginning. And I believe, again, I wasn't there, but I believe that the parties deferred that to the remedy part. Because the union's representative said, no, that goes to the arbitrator's jurisdiction. And that's over the remedy. So I believe it was subsumed in the second part of the analysis, which is whether there was just cause to terminate the grievance. And if not, what shall be the remedy? So this question of whether you have separate findings and arbitrariness and just cause, right? That's a big part of the dispute. What's your take on the reality that lawyers often will use two words where one will do, or in this case, three words where one will do? So a pretty good example of that is the arbitrary and capricious standard of review. It's pretty hard to think of something arbitrary that's not capricious and vice versa. I would say, in this case, it would be very strange to say a firing decision was arbitrary but had just cause. That seems pretty odd to me. That's an odd point. So what I'm getting at is how harmful the error is. I mean, you would agree with me. Arbitrary and capricious, those are synonyms. I would say arbitrary and capricious, but I would not agree that arbitrary and no just cause are synonymous. I think those are two very different things. So employment action that's arbitrary, wouldn't that always subsume just cause? It would, but an employment action without just cause would not always be arbitrary. It could be without just cause for a variety of reasons. And the union argued in its post-hearing brief that imposing this, a different penalty based on a reasonable suspicion test than you impose based upon a random test, would be unfair or arbitrary. The arbitrator noted that in his just cause analysis, but the reason he modified the penalty was not because he found that the company acted arbitrarily. He modified the penalty because of the grievance work history, because of the grievance lack of active discipline. And his 19 years. Right, right. And his long history and his, the arbitrator did not base his modification of the penalty on any difference in the two consequences based upon whether it's a reasonable suspicion test or a separately negotiated remedy for random drug testing. And I suppose the company's position would be that what the arbitrator did here is impose his own brand of industrial justice. We believe he did. In the ordinary case, arbitrators are free to formulate remedies, but the case is recognized that the parties can curtail that freedom. And in this case, the parties did. The parties said you can't. I think what we're wrestling with is did your company, though, sort of waive its right to insist on a finding of arbitrariness in the way it agreed to frame the question presented to the ALJ? I understand, and I believe that, we do not believe that the company waived that. Do you think your post-hearing briefs to the arbitrator and the understanding of what the remedy brings back Article 15 solves the problem? Yes, we do believe so. I mean, we specifically made that argument in the post-hearing brief, which is what the arbitrators typically look at after they get the ñ there's typically a long period of time between. Well, if that's so, why didn't the arbitrator apparently didn't heed your post-hearing briefs, though? In his decision, he didn't even mention arbitrary. You're correct. And that's in response to your earlier question, Judge Sutton, about can we sort of infer or he just left the word ñ I mean, he didn't mention the word arbitrary once in his brief, and he didn't in his opinion, and he didn't analyze the opinion or modify the remedy in that way. One sense that makes it look like he really botched it, but then in another sense, if you read this colloquy at the beginning of the hearing, you go, hmm, now I can understand why he didn't mention it. No one else did. I mean, I'm just telling you there's two ways to look at it. And I think if the parties had not argued the issue in their post-hearing briefs, I think it would be maybe a better case. But they did and squarely set that issue before the arbitrator. And the arbitrator is bound by the contract. In the end, he only has the authority that the parties have agreed to give him. Unless your client waived it. Right. And, you know, I don't think there's anything in the record that shows that the company waived that. There was no knowing favor, certainly. There is something in the record that you waived, at least before the post-arbitration briefs. What about the ñ yeah, I'm sorry. It's fine. I mean, I was trying to figure out how this happened. And one theory ñ it's actually my clerk's. I thought it wasn't a bad point. This looks like such an easy case. That's why everyone was being casual about it. You know, you show up drunk to work and you test. Not everyone is saying, let's read the whole CBA and, you know, cross every T and dot every I. And so no one worried about arbitrariness because they're thinking, how can this not be just cause? So that was ñ how was that as a theory? I can't speak ñ I was not at the arbitration hearing. I can't speak for that, but I can say that the colloquy at the arbitration hearing is always, always followed up by post-hearing briefs. And that post-hearing briefs are ñ I'd love to have some law that ñ that's why I was asking this question at the beginning, trying to figure out if there's something different. I mean, I don't think a district court judge would say, if you frame it to me this way, I don't think post-hearing briefs, after I've listened through all this, listened to the witnesses, was trying to decide the case during the hearing that the post-hearing briefs allow you to shift the prism or shift the lens to looking at something. I think the average trial judge would say, you've got to be kidding me. That may be true for the average trial judge. So I'm trying to figure out if arbitration has some custom that's different. And you're suggesting it's different, but I don't know if there's cases that say that. And, you know, Judge Carr, again, decided this very same issue in ñ He may have just been wrong twice. ñ the other Johns Manville case. I don't know. There was no ñ there was no appeal of the last, you know, to the extent that there's issue of preclusion here because he decided that and there was no appeal of that issue. And it wasn't ñ it wasn't raised in response to that ñ to that case. Did the same thing happen the last time? The same framing? Yes, there was the same framing in the last case. And Judge Carr just said that that was not relevant to the analysis. Because, again, you have to ñ So a couple twice, the couple twice framed it this way. It's fairly ñ isn't that fairly common? I mean, I've seen other cases where it's almost routine and they go, okay, the question's just cause. That is ñ that is if there is a standard. And if you asked any arbitrator, they'd probably tell you that's always the question. But, again, the contract itself, which is what gives the arbitrator his authority in the first place, places a limitation on his ñ No, but the ñ He was authorized. He was ñ and looking at the three factors, he did ñ it's our position that he was authorized to review this dispute and to determine whether there was just cause. But he had ñ there was a second step. In order to modify the remedy, he had to address that second issue. But that has to be ñ that has to be presented to the arbitrator. I mean, you'd think that that would be made very clear, that the question is, is there just cause, and even assuming that there isn't, you have to find that it's arbitrary. That's correct. And we believe that that's the argument that we made to the arbitrator. Again, it was raised at the outset, and then it was included in the post-hearing brief. The arbitrator paid no attention to your brief. That may be that the arbitrator or the arbitrator decided that he didn't want to live within the limitation on his authority. We don't ñ we don't know why the arbitrator did what he did, but we do believe that he exceeded his authority. And your point, Judge Sutton, that he could not have arguably been construing that provision of the contract because he didn't even mention it. Okay. I think we understand your argument. Thank you. Thank you. We've got some rebuttal. Just very briefly, Your Honor. Okay. I want to respond to simply two aspects of the plaintiff appellee's presentation. First of all, I respect this Court's emphasis upon the framing of the issue and the importance that that holds for this case. But I do want to offer an alternative as well to the Court, which is that, as counsel has noted, that both parties briefed in their post-arbitration briefs, they briefed the issue and included a reference to Article 15. And you find that reflected in two areas of the opinions, pardon me, the decisions, recitations of the respective positions of the union and the company. On pages 9 and 10 of the opinion, where the arbitrator restates the position of the employer, he quotes, he says, the employer argues that treating the grievance in a different manner by imposing a less severe penalty would be arbitrary and outside the jurisdiction of the arbitrator. When he states the position of the union, the arbitrator says that the union states that the collective bargaining agreement includes a just cause provision, which limits the discharge of a bargaining employee, a discharge from employment, therefore it must be reasonable and fair. The union states that the discharge of an employee may not be arbitrary. So we assume that the arbitrariness question is reflected in the decision, in the totality of the decision itself. I mean, this is a pretty interesting rebuttal argument, because you're acknowledging that the arbitrator knew about the arguments. Presumably he wouldn't have written them down if he didn't know about them. But that heightens the drama as to why in the analysis he doesn't refer to Article 15. So I guess... I understand. I understand. And in a sense, I almost hesitated to bring that, because I understand, as I said, the primacy of the framing question. But as I said, I wanted to offer an alternative, because I don't think that... Well, I think the framing issue is very important. It's not the only basis upon which this award can be upheld and the decision of the district court reversed, because the arbitrariness concept is embedded in the decision, and it's embedded in the outcome as well. The arbitrator noted the disparate consequences for employees who fail an alcohol or drug test. In the one instance... I'm going to go read those briefs, so just remind me, if you remember, were the parties when they were making their arguments and citing Article 15 and 27 that's recited, were they in their briefs saying, and here's the distinction between arbitrariness on the one hand and just cause on the other? That was joined in the post-hearing briefs, that debate? I'm sorry, sir, I can't answer that question. I don't have the answer at my fingertips. So, yeah. But I believe I've run out of time. Yeah, I think we understand what you're saying. We appreciate the briefs and your argument. Thanks for answering our questions. We always appreciate that. The case will be submitted, and the clerk may adjourn court.